IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAINY M. GIBSON,<br><br>              Plaintiff,<br><br>    v.<br><br>JAKE CHARLES, et al,<br><br>              Defendants. | CIVIL ACTION<br>NO. 20-5945 |

**MEMORANDUM OPINION**

**Schmehl, J.  /s/ JLS**                                                                                              **January 25, 2022**

**I.      INTRODUCTION**

      Plaintiff, Rainy M. Gibson ("Gibson"), initiated this action by filing a Complaint against Michael Buchanan, Jake Charles, John Doe, and Northampton Borough Police Department on November 24, 2020. On December 1, 2020, Northampton Borough Police Department was dismissed as a defendant with prejudice. Gibson filed an Amended Complaint on May 24, 2021, against Michael Buchanan, Jake Charles, Robert Frantz, Thereafter, Robert Hawke, Northampton County Prison and Northampton Criminal Court. Northampton County Prison, Northampton Criminal Court and Robert Hawke were dismissed with prejudice by an Order dated July 29, 2021, and Gibson was directed to serve the remaining Defendants, Michael Buchanan, Jake Charles, and Robert Frantz (hereinafter referred to as "Defendants").

      On August 10, 2021, Gibson filed a Motion for Reconsideration, asking the Court to reconsider the dismissal of Robert Hawke, Northampton County Prison and Northampton Criminal Court as defendants. Defendants moved to dismiss Plaintiff's

Amended Complaint, then Gibson filed a Motion to Strike exhibits that were attached to Defendants' Motion to Dismiss. Lastly, Gibson then filed an "Emergency Motion for Preliminary Injunction" on November 8, 2021. All pending motions will be disposed of in this opinion.

II.     **STATEMENT OF FACTS**

In her Amended Complaint, Gibson alleges that she was traveling in her car on Walker Drive at 5:07 p.m. on October 20, 2020. Am. Compl. at ¶ 10. Officer Charles activated his emergency lights and siren which startled Gibson, causing her to hit the curb. *Id*. at ¶¶ 11, 12. Officer Charles demanded Gibson's "private information" asserting a Penn DOT traffic code violation. *Id*. at ¶ 13. Gibson asserted her alleged rights not to consent to any search or seizure, and Officer Charles continued to demand "papers." *Id*. at ¶¶ 14, 15. Gibson only provided her first name to Officer Charles. *Id*. at ¶ 15. Officer Charles then called Sergeant Buchanan, a K-9 Officer, and Officer Frantz. *Id*. at ¶ 16. Officers Charles and Frantz and Sergeant Buchanan continued to demand Gibson's "private information" which she refused to provide. *Id*. at ¶ 18. Defendants informed Gibson that she was not free to go and questioned Gibson's relatives who remained silent. *Id*. at ¶¶ 19, 20. An unspecified officer went to Gibson's house causing her sons to run and hide. *Id*. at ¶ 21. Gibson was then forced into the backseat of Officer Charles' squad car, and was left there for 30 minutes with a mask on due to COVID-19. *Id*. at ¶¶ 22, 23. Officer Charles' squad car had the windows rolled up with no air conditioning on an "over 70-degree day" while Gibson was still wearing a mask. *Id*. at ¶ 24. While Gibson was in the squad car, Officer Charles was standing behind the car on the phone

for 30 minutes. *Id*. at ¶ 25. Gibson's wallet was confiscated by Sergeant Buchanan. *Id*. at ¶ 26.

Officer Charles took Gibson to the Pennsylvania State Police located on Airport Road in Allentown, Pennsylvania, where she was questioned and "forcefully" fingerprinted by an unknown Pennsylvania State Police Officer. *Id.* at ¶¶ 27, 28. Officer Charles continued to question Gibson and "taunt" her about her failure to identify herself. *Id*. at ¶ 29. Officer Charles then transported Gibson to Northampton Borough Police Department where she was handcuffed to a pole on a wall in a conference room where she remained for over three and a half hours. *Id.* at ¶¶ 30, 32. Sergeant Buchanan went through Gibson's wallet and made copies of items contained therein. *Id.* at ¶ 31. At 8:30 p.m. Sergeant Buchanan then removed Gibson's handcuffs and informed her that she was free to go and that charges would be filed against her in 5 days through the mail. *Id.* at ¶¶ 33 -35. Gibson then walked home in the dark until a relative picked her up along the way. *Id.* at ¶ 35.

On November 2, 2020, Officer Charles and Sergeant Buchanan filed a summons citing a violation of Penn DOT traffic codes. *Id.* at ¶ 36. The summons lacked a signature from a prosecutor. *Id.* at ¶ 37. On October 30, 2020, Judge Robert Hawke sent Gibson a letter via mail informing her that if she failed to report to the Central Booking Center she would be detained. *Id.* at ¶ 38. Gibson returned the documents sent by Judge Hawke and indicated that she did not consent to the use of "personal confidential identifies," which Judge Hawke "ignored." *Id.* at ¶¶ 39, 40.

On January 15, 2021, Gibson claims she was "ambushed" by sheriff's deputies at the Northampton Criminal Court. *Id*. at ¶ 41. Gibson had an outstanding bench warrant

3

and was shown an "unauthenticated" printout at the time of the "ambush." *Id.* at ¶ 42. Gibson was then taken to intake at Northampton County Prison where she was demanded to sign papers and have her picture taken. *Id.* at ¶¶ 43, 44. Gibson declined to answer questions or sign papers and was subject to a strip search while her property was seized. *Id.* at ¶¶ 45, 46. Unidentified Officers and a Lieutenant threatened and attempted violence "on" Gibson. *Id.* at ¶ 47. Gibson was then taken to suicide watch without "Notice of Hearing" or an arrest warrant. *Id.* at ¶ 49. On January 19, 2021, Gibson received a phone call from Kate Johansen from Pretrial Services. *Id.* at ¶¶ 50, 51. Ms. Johansen asked questions required for a bail hearing, but Gibson declined the application for bail hearing because it required "corporate status, social security number, bank account numbers, and alleged charges." *Id.* at ¶ 52. On the same day, a hearing was held in front of Northampton County Judge Jennifer R. Sletvold. *Id.* at ¶ 53. Judge Sletvold demanded Gibson to "affirm" or swear to give testimony, which Gibson refused to do and stated that she had a right to not be a witness against herself and that she did not receive any charges from the prosecution. *Id.* at ¶ 55. Judge Sletvold deemed Gibson incompetent, labeled her as "trouble," and ordered a competency hearing. *Id.* at ¶ 56. Gibson was not issued bail from January 15, 2021 to February 17, 2021, and while she was incarcerated wrote numerous letters to various court administrators. *Id.* at ¶¶ 57, 58. Gibson's husband hired an attorney on February 15, 2021, who attended a bail hearing on February 17, 2021, where Gibson was released on a $1.00 bail. *Id.* at ¶¶ 59, 60, 62.

### III. <u>LEGAL STANDARD</u>

Motions for reconsideration are granted to correct "manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d

Cir. 1985). For the Court to reconsider a decision, a plaintiff would have to show (1) an intervening change in controlling law; (2) new evidence not available when the court entered its original order; or (3) that reconsideration was necessary to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Cafe ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

Federal Rule of Civil Procedure 12(b)(6) governs the Court's motion to dismiss analysis. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (*citing Iqbal,* 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (*quoting Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) "[i]t must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine

5

whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (*quoting Iqbal*, 556 U.S. at 675, 679). *See Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

## IV. DISCUSSION

### A. Motion for Reconsideration

Gibson has identified no error, omission, change in the law, or new evidence that would warrant the Court revisiting its decision to dismiss Robert Hawke, Northampton County Prison and Northampton Criminal Court as defendants in this matter. Accordingly, her motion to reconsider is denied.

### B. Motion to Dismiss

A review of Gibson's Amended Complaint shows that she has pled claims for violations of her civil rights under section 1983, specifically excessive force, civil conspiracy, and supervisor liability, as well as claims for malicious prosecution and false arrest. Defendants have moved to dismiss all counts of Gibson's Amended Complaint. For the reasons set forth below, I will grant Defendants' motion in its entirety, but will allow Gibson to file a Second Amended Complaint with more specificity as to her allegations of excessive force, civil conspiracy and supervisor liability only.

#### 1. Excessive Force Claim

Excessive force claims arising in the context of an arrest or detention are analyzed under the Fourth Amendment's "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Fourth Amendment specifically prohibits unreasonable searches and seizures, and a claim for excessive force under that Amendment must therefore show

6

the existence of such an unreasonable seizure. *Lamont v. New Jersey*, 637 F.3d 177, 182-83 (3d Cir. 2011). A court "must determine the objective 'reasonableness' of the challenged conduct, considering 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others and whether she is actively resisting arrest or attempting to evade arrest by flight.'" *Couden v. Duffy*, 446 F.3d 483, 496-97 (3d Cir. 2006) (*quoting Carswell v. Borough of Homestead*, 381 F.3d 235, 240 (3d Cir. 2004)). This standard is one of objective reasonableness and the reasonableness of the force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396.

In the instant matter, Defendants claim that Gibson has failed to allege any conduct on the part of Defendants that was "unreasonable" or "excessive." Specifically, Gibson alleges "Charles activated his emergency lights and siren when there was no emergency," "demanded [Gibson's] private information," "used force against [Gibson] [which] was excessive considering no crime was committed, [Gibson] did not reasonably appear to pose an immediate threat to the safety of [the Officers], and [Gibson] was not actively resisting arrest." Am. Compl. at ¶ 72.

I agree with Defendants that Gibson has failed to allege conduct on the part of Defendants that rises to the level of unreasonableness or excessiveness. Therefore, Defendants' motion will be granted as to Gibson's excessive force claim. However, due to her *pro se* status, Gibson will be given an opportunity to file a Second Amended Complaint containing specific factual allegations to support her claim of excessive force. If she cannot do so, her Second Amended Complaint may be dismissed.

### 2. Civil Conspiracy Claim

In Count II of her Amended Complaint, Gibson brings a Civil Conspiracy Claim pursuant to 42 U.S.C. § 1983. To show a claim of civil conspiracy under Section 1983, Gibson must allege that (1) two or more persons conspired to deprive her of a constitutional right; (2) that one or more of the conspirators performed an overt act in furtherance of the conspiracy; (3) the overt act injured Gibson by depriving her of her constitutional right; and (4) the conspirators were acting under color of state law. *Barnes Found v. Twp. of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001) (quoting 42 U.S.C. § 1983)). A "mere general allegation" or "averment of conspiracy or collusion without alleging the facts which constituted such conspiracy or collusion is a conclusion of law and is insufficient" to state a claim for civil conspiracy under Section 1983. *Kalmanovitz v. G. Heileman Brewing Co.*, 595 F. Supp. 1385, 1400 (D. Del. 1984) aff'd, 769 F.2d 152 (3d Cir. 1985).

In the instant matter, the allegations against Defendants are that they "agreed with one another implied by their conduct and intended to commit violations against [Gibson's] rights." Am. Compl. at ¶ 89. These allegations are insufficient to set forth specific facts that support the elements of a civil conspiracy claim. Gibson's allegations are conclusory and include no facts that would permit a reasonable inference that Defendants conspired to violate her constitutional rights. However, due to her *pro se* status, Defendants' motion will be granted but Gibson will be permitted to file a Second Amended Complaint that properly sets forth the facts regarding the time, place, or conduct of the alleged conspiracy. If she fails to do so, her Second Amended Complaint may be dismissed. Further, Gibson must clarify in her Second Amended Complaint

whether she is pursuing a civil conspiracy claim under 42 U.S.C. § 1983 or 42 U.S.C. § 1985.

### 3. Malicious Prosecution Claim

Gibson brings a malicious prosecution claim in Count III of her Amended Complaint. To state a claim for malicious prosecution, Gibson must show: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in her favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than brining the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005). The favorable termination element is only satisfied if the criminal case was "disposed of in a way that indicates the innocence of the accused." *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009). Nowhere in Gibson's Amended Complaint does she allege that the criminal proceeding terminated in her favor. In fact, the Northampton County docket entries indicate that the case is still active as of the date of this opinion. Accordingly, as the state court criminal proceeding is still ongoing, and cannot be said to have ended in Gibson's favor, Defendants' motion is granted. Gibson's malicious prosecution claim is dismissed from this matter without prejudice. If the Northampton County criminal matter eventually does terminate in Gibson's favor, she can re-file at that time.

### 4. False Arrest Claim

Next, Gibson brings a false arrest claim against Defendants. To state a Section 1983 claim for false arrest or false imprisonment, the plaintiff must show: (1) that there was an

9

arrest; and (2) that the arrest was made without probable cause. *James v. City of Wilkes Barre*, 700 F.3d 675, 680 (3d Cir. 2012). Therefore, Gibson must allege facts that she was arrested and facts sufficient to support a reasonable inference that Defendants acted without probable cause. "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). The court uses the totality of the circumstances approach to assess the reasonableness of the officer's conduct, and the court considers the perspective at the time he or she acted. *Carswell v. Borough of Homestead*, 381 F.3d 235, 246 (3d Cir. 2004).

Gibson claims that she was detained on October 20, 2020, and taken to the Pennsylvania State Police, where she was questioned and "forcefully" fingerprinted, then transferred to Northampton Borough Police Department where she was handcuffed to a pole on a wall in a conference room for over three and a half hours. Am. Compl. at ¶¶ 27, 30, 32. However, she fails to allege that she was arrested, nor does she allege that Defendants acted without probable cause. Accordingly, Defendant's motion will be granted as to Plaintiff's October 20, 2020, detention, but Plaintiff will be granted leave to amend her complaint to properly allege an arrest and a lack of probable cause on the part of Defendants.

If Gibson's false arrest claim arises from her arrest on January 15, 2021, at the Northampton County Courthouse, her claim must fail for several reasons. First, Gibson failed to plead that any of the remaining Defendants in this matter were involved in her arrest or were implicated in any way. Further, her arrest at the Northampton County

Courthouse was supported by probable cause. Gibson alleges that ten days after the traffic stop, she received a summons citing Penn DOT code violations and "threatening mail communications" from Judge Hawke notifying her that her "failure to report to the Central Booking Center will result in [her] detention." Am. Compl. at ¶ 36, 38. Gibson next alleges that she returned this letter and summons to Judge Hawke stating that she did "not consent[] to using personal confidential identifies." *Id.* at ¶ 39. Apparently, Gibson failed to appear for her traffic summons and the court issued a bench warrant for her arrest. *Id.* at ¶ 42. Gibson was detained pursuant to that warrant. "The simple fact of nonappearance [for her summons] provided … probable cause… for a bench warrant." *In re Grand Jury Proceedings Harrisburg Grand Jury 79-1*, 658 F.2d 211, 214 (3d Cir. 1981). Accordingly, probable cause existed for Gibson's arrest on January 15, 2021, and there was no Fourth Amendment violation. Therefore, Defendants' motion is granted as to Plaintiff's January 15, 2021, arrest and her claims for false arrest as to the January 15, 2021, arrest only are dismissed from this matter with prejudice.

    **5. Supervisor Liability Claims**

As a general rule, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). In *Iqbal*, the Supreme Court held that "[b]ecause vicarious or supervisor liability is inapplicable to … [Section] 1983 suits, a plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Thus, each government official is liable only for his or her own conduct. The Third Circuit recognizes supervisor liability

where a supervisor "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of or acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 127 n. 5 (3d Cir. 2010).

As Gibson has been given the opportunity to amend her complaint to include specific factual allegations as to Defendants' alleged constitutional violations, Defendants' motion will be granted, but Gibson will be allowed to amend her complaint to set forth constitutional violations on the part of Defendants and to allege that Defendants were supervisors, if in fact they were.

In conclusion, Defendants' motion to dismiss will be granted, but Gibson will be permitted to amend her claims of excessive force, civil conspiracy and supervisory liability to set forth specific facts that will support her allegations, as I am mindful of the fact that in civil rights cases, *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety. *See Fletcher–Hardee Corp. v. Pote Concrete Contractors,* 482 F.3d 247, 253 (3d Cir.2007). However, Gibson is warned that her Second Amended Complaint may be dismissed if she again fails to plead her claims with proper factual specificity. Gibson is also warned that her allegations of false arrest and malicious prosecution are dismissed from this matter and are not to be included in her Second Amended Complaint.

### C. Motion for Preliminary Injunction

Gibson filed an Emergency Motion for Preliminary Injunctive Relief on November 8, 2021. This motion relates exclusively to her ongoing state criminal proceeding and is directed at individuals who are not parties to the instant action.

It appears that Gibson is seeking injunctive relief in connection with her ongoing state court matter. However, her claims are barred by the *Younger* abstention doctrine. *Younger* abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding. *Kendall v. Russell*, 572 F.3d, 126, 130 (3d Cir. 2009) (*citing Younger v. Harris,* 401 U.S. 37, 41 (1971)). As described by the Third Circuit, a district court's discretion to abstain under *Younger* can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. *Matusow v. Trans-County Title Agency, LLC.*, 545 F.3d 241, 248 (3d Cir. 2008). Further, "[a] necessary concomitant of *Younger* is that a party [wishing to contest in federal court the judgment of a state judicial tribunal] must exhaust her state appellate remedies before seeking relief in the District Court." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369 (1989). Moreover, federal courts frequently abstain from hearing matters which necessarily interfere with state criminal cases. *Lui v. Commission on Adult Entertainment Establishments*, 369 F.3d 319 (3d Cir. 2004); *Zahl v. Haper*, 282 F.3d 204 (3d Cir. 2002).

In the instant matter, Gibson has failed to exhaust her state appellate remedies and rather is requesting this Court to intervene in her ongoing state criminal case. However, this Court must abstain from interfering with Gibson's ongoing criminal matter in accordance with the *Younger* doctrine and deny Gibson's Motion for Emergency Injunctive Relief with prejudice. Furthermore, Ms. Gibson's Motion will be denied as her allegations in her motion relate solely to individuals who are not parties to this action.

Gibson complains of actions taken by Judge Jennifer Sletvold who has never been a party to the instant action and includes allegations against Northampton County Criminal Court who was dismissed from this action on July 29, 2021. As such, Gibson's request for emergency injunctive relief is in no way related to any of the named Defendants in this matter and must be denied.

### D. Motion to Strike

Lastly, Gibson filed a Motion to Strike in which she seeks to have Exhibits 1 and 2 attached to Defendants' Motion to Dismiss stricken from the record. These exhibits are docket sheets related to Gibson's state court criminal matters. As courts can take judicial notice of the existence of prior and ongoing proceedings in a motion to dismiss, Gibson's motion to strike will be denied. Defendants are submitting those dockets as evidence of the existence of ongoing proceedings, which is not improper. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 427 n.7 (3d Cir. 1999). Accordingly, Gibson's Motion to Strike will be denied.

## V. CONCLUSION

For all the reasons set forth above, Defendants' Motion to Dismiss is granted and Gibson is given thirty (30) days to file a Second Amended Complaint setting forth her claims of excessive force, civil conspiracy and supervisor liability ONLY with sufficient factual specificity. Further, Gibson's motion for reconsideration, motion to strike and emergency motion for a preliminary injunction are denied.